THOMPSON STREET HOLDING CORPORATION, Plaintiff, *v.* THE SHERWIN-WILLIAMS COMPANY, Defendant.

First Department, February 11, 1932.

*Horace G. Marks* of counsel [*Samuel Kahan,* attorney], for the plaintiff.

*Melville J. France* of counsel [*Wood, Molloy & France,* attorneys], for the defendant.

MERRELL, J.   The parties to this controversy have stipulated the following facts: That at all the times mentioned in the submission instrument, plaintiff was and now is a domestic corporation, and the defendant was and now is a foreign corporation created and organized under the laws of the State of Ohio; that at all times mentioned in the submission agreement plaintiff was the owner and lessor of the building and premises known as 52–54–56 Thompson street, in the borough of Manhattan, city of New York; that on June 8, 1920, plaintiff and defendant executed and entered into a lease of the seven-story building known as 52–54–56 Thompson street, in the borough of Manhattan, city of New York, and covering an area of fifty-six feet one inch by ninety-four feet, the fifty-six feet one inch being the frontage on Thompson street, and the ninety-four feet being the depth.   A copy of the lease is set forth in the submission agreement.   The lease bore date June 8, 1920, and was between plaintiff, Thompson Street Holding Corporation, party of the first part, and the defendant, Sherwin-Williams Company, party of the second part.   By the terms of the lease the party of the first part let, granted and demised unto the party of the second part, and the party of the second part took and hired the premises aforesaid with the appurtenances, for a term commencing on the 1st day of June, 1920, and terminating on the 31st day of December, 1935, for a yearly rental of $17,200 per annum, payable in equal monthly installments of $1,433.34 on the first day of each and every month in advance.   The lease contained many covenants binding the respective parties thereto, most of which are not pertinent to this controversy between the parties.   Under said lease the defendant entered into possession of the demised premises on the 8th day of June, 1920, and continued to occupy the same from that date and during all the times mentioned in the submission agreement.   The parties hereto are in dispute as to who shall bear the expense of certain repairs made upon the demised building a little over a year after the commencement of the term of said lease.   The repairs in question were made by the plaintiff in obedience to an order of the superintendent of buildings for the borough of Manhattan, dated April 1, 1921, and on that day served upon both plaintiff and defendant herein. This notice, which was served upon both of the parties, was as follows:

"Bureau of Buildings
"Borough of Manhattan, City of New York
"20th Floor, Municipal Building                DM
"Centre and Chambers Streets

---

"In the Matter of the Unsafe Building
   Located 52–56 Thompson Street      } Notice
Record No. U. B. 540            1921

---

"Dated: *April* 1, 1921

"To Thompson Street Holding Corpn., Owner
   "c/o Bernard Karp — Pres.
      "135 Hudson Street
      "116 West 32nd Street
"Sherwin Williams Co., Lessee
   "You will please take notice that the building situate on the front of the lot on the east side of Thompson Street commencing about 50 feet from the northeast corner of Broome Street and Thompson Street being a base & 7 story non-fireproof-brick building, about 50 feet front 50 feet rear 100 feet deep and 75 feet high, and occupied as a storage warehouse, said property being known as Numbers 52–56 Thompson Street in the Borough of Manhattan, in the City of New York, has been reported to me as unsafe and dangerous in the following respects, to wit:
   "In that the south wall is bulged and out of plumb, and is unsafe.
   "You are therefore required to make same safe and secure by doing the following work   *   *   *   and as soon as this work has been done, you will please notify this Bureau requesting an inspection:
   "By spur bracing the south wall immediately, and then providing one inch and a half rods with turnbuckles between beams through to outside of both south and north walls, with stars and nuts, about 6 or 7 feet apart on all stories, and do all work in a substantial and safe manner according to law.
   "You will also take notice that you are hereby required to certify immediately to the Superintendent of Buildings for the Borough of Manhattan your assent or refusal to secure or remove said building, and that unless you so do a survey will be ordered to be held thereon as the law directs, and that all costs and expenses incurred thereby will become a lien on said building and premises.
                    "RUDOLPH P. MILLER,
      "*Superintendent of Buildings for the Borough of Manhattan.*
   "Please Bring This Notice with You."

At the time the defendant entered into possession of the demised premises there was posted upon each floor a sign bearing the following language:

" NOTICE.

" This floor will carry a uniformly distributed load one square foot of 225 lbs.

" D'OENCH & SIMON

"*Architects.*"

Such notice was so posted pursuant to section 55 of the Building Code of the City of New York then in force. On April 1, 1921, there was also served by the superintendent of buildings of the borough of Manhattan, New York city, upon both plaintiff and defendant herein, a notice to the effect that the building in question did not conform to section 55 of the Building Code in that of placing, causing or permitting to be placed on all floors a greater load than the safe load as estimated and ascertained in accordance with law, the notice stating, " You are hereby directed to remove the above violation forthwith." On April 1, 1921, when the said notice was served by the superintendent of buildings, the weights upon the various floors of the building in question were as follows:

Basement, thirty-four pounds per square foot.
First floor, seventy-one pounds per square foot.
Second floor, thirty-eight pounds per square foot.
Third floor, forty pounds per square foot.
Fourth floor, sixty-two pounds per square foot.
Fifth floor, fifty-six pounds per square foot.
Sixth floor, thirty-eight pounds per square foot.
Seventh floor, forty-five pounds per square foot.

It is stipulated by the parties that on April 1, 1921, the south wall of the leased premises leaned eight inches to the south, and that prior to June 8, 1920, when the defendant entered into possession of the said premises as lessee, the south wall of the leased premises leaned eight inches to the south, and that the settlement and leaning present in the building on April 1, 1921, existed to practically the same extent when the lease herein was entered into on June 8, 1920. It was further stipulated that foundation test borings made in September and October, 1921, on the premises 52–54–56 Thompson street disclosed the following:

" Boring No. 1, at a point along the southerly wall 27 feet 6 inches from the front line of the building and at a depth of 10 feet below the curb showed the material to be coarse water bearing sand.

" Boring No. 2, at a point along the southerly wall 59 feet 4 inches from the front line of the building and at a depth of 10 feet

below the curb showed the material to be muck, sand and soft gravel.

" Boring No. 3, at a point along the southerly wall 14 feet 6 inches from the rear line of the building and at a depth of 10 feet below the curb showed the material to be filling and below that depth to be muck, sand and gravel."

The parties further stipulated that there were no piles under the foundations, and that the original building plans and specifications, filed August 21, 1893, provided for a foundation ten feet below the curb level on sand, base of concrete twenty-four inches thick. The parties further stipulated that the settlement of the walls of the premises in question was due to the character of the materials under the foundation.

The plaintiff requested and called upon the defendant to perform all the requirements set forth and to do the work called for by the notice aforesaid from the superintendent of buildings, and the plaintiff requested the defendant to comply with all the requirements of the bureau of buildings of the borough of Manhattan, city of New York, as set forth in said notice, and save plaintiff harmless therefrom, and the defendant refused so to do. Plaintiff was obliged, after notice to the defendant, to perform the work called for and made necessary by said notice, and it is stipulated that the reasonable value and cost of said work, which was completed on or about June 23, 1921, was $5,400. The floor capacity of the seven floors of the said building was after the completion of said work established at 125 pounds per square foot. Plaintiff demanded from defendant payment of the sum of $5,400, but the defendant refused to pay the same, and has paid no part thereof. Plaintiff claims and demands that upon the stipulated facts it is entitled to judgment in the sum of $5,400, with interest from June 23, 1921, which the defendant denies.

The 8th clause of the lease entered into by the parties on June 8, 1920, provided as follows: " 8. And the said party of the second part further covenants and agrees that it will comply with all the requirements of the Board of Health, Municipal Authorities and Police and Fire Departments of the City of New York of every kind, character and description and that it will not create or permit any nuisance in the premises hereby rented to the annoyance of neighboring occupants."

The 17th clause of the lease, subdivision (b), provides as follows: " (b) And the said party of the second part further agrees to promptly comply with and fulfill all rules, orders, regulations and requirements of the New York Board of Fire Underwriters and (or) the New York Fire Insurance Exchange affecting the demised

premises for the prevention of fires and the reduction in premiums for fire insurance on the said premises and its contents, also to promptly comply with all orders of the Municipal and State authorities affecting the demised premises. It being understood and agreed as a condition upon which this lease is granted, that in the event of the tenant failing to comply with and fulfill any rule, order, regulation or requirement of the New York Fire Insurance Exchange and (or) the New York Board of Fire Underwriters, as provided in this lease, the tenant hereby authorizes the landlord to have the work done and add the cost of same to the rent then due or next to become due hereunder."

It is the contention of the plaintiff that under the said 8th clause of the lease and that under that part of subdivision (b) of clause 17 of the lease reading as follows: "17 * * * (b). And the said party of the second part further agrees * * * to promptly comply with all orders of the Municipal and State authorities affecting the demised premises," the defendant became obligated to pay the expense of the alterations made by plaintiff in obedience to the said notice of the superintendent of buildings of April 1, 1921. On the other hand, the defendant contends that the provisions of the lease must be considered as a whole, and that the portions thereof upon which plaintiff relies are not applicable to the work and repairs effected by plaintiff. According to the notice as to the weights which could safely be placed upon the various floors of the building, it appears that the load which was actually placed upon each of the floors of the building by the defendant varied from one-sixth to one-third of the weight authorized and held out in conformity with the ordinance at the time the defendant entered into the leased premises. Subdivision (b) of the 17th clause of the lease, upon which plaintiff seeks to hold the defendant, it seems to us, is too narrowly construed by the plaintiff. That clause provides that the party of the second part (the defendant) agrees to promptly comply with and fulfill all orders and regulations of the New York Board of Fire Underwriters and the New York Fire Insurance Exchange affecting the demised premises for the prevention of fires and the reduction of premiums for fire insurance on the said premises and its contents, also to promptly comply with all orders of the municipal and State authorities affecting the demised premises. The clause then provides as follows: "It being understood and agreed as a condition upon which this lease is granted, that in the event of the tenant failing to comply with and fulfill any rule, order, regulation or requirement of the New York Fire Insurance Exchange and (or) the New York Board of Fire Underwriters, as provided in this lease, the tenant hereby authorizes the landlord to

have the work done and add the cost of same to the rent then due or next to become due hereunder."

In our opinion that clause was intended by the parties, not to embrace the order of the superintendent of buildings above referred to, but particularly apply to regulations and requirements of the New York Fire Insurance Exchange and the New York Board of Fire Underwriters. In our opinion the controlling provision of the lease, so far as the dispute here is concerned, was its 16th clause, which specifically refers to repairs upon the building and provides as follows: " 16. It is further agreed between the parties to these presents —

" (a) That the party of the second part shall and will at its own cost and expense make all ordinary repairs to the interior of said premises and the appurtenances thereof necessary to preserve them in reasonable good order and condition.

" (b) That the party of the first part shall and will make all repairs to the exterior of the premises and appurtenances thereof, including the roof, and shall also make such interior repairs, alterations and improvements in excess of the ordinary repairs for which second party is responsible (covered in sub-section [a]) above as said first party may deem necessary or desirable, including repairs incident to inherent or latent defects, in any part or portion of the leased premises."

In the clause above quoted we have a plain statement of the respective obligations of the lessor and lessee of the building. By subdivision (a) the party of the second part to the lease (the defendant herein) is obligated, at its own cost and expense, to make all ordinary repairs to the interior of said premises and the appurtenances thereof necessary to preserve them in reasonably good order and condition. By subdivision (b) it is provided that the party of the first part (the plaintiff herein) shall and will make all repairs to the exterior of the premises and appurtenances thereof, including the roof, and shall also make such interior repairs, alterations and improvements in excess of the ordinary repairs for which second party (defendant) is responsible (covered in subsection [a]) above as said first party may deem necessary or desirable, including repairs incident to inherent or latent defects, in any part or portion of the leased premises. The above subdivisions of the 16th clause of the lease are plain and unambiguous. Thereby it was the duty of the lessee to make all ordinary repairs to the interior of the premises and the appurtenances thereof necessary to preserve them in reasonably good order and condition, and by clause (b) it is provided that the party of the first part (the landlord) shall and will

make all repairs to the exterior of the premises and appurtenances thereof, and is also to make such interior repairs, alterations and improvements in excess of those specified to be made by the lessee, " including repairs incident to inherent or latent defects, in any part or portion of the leased premises." A plain reading of clause 16 leaves no doubt in our minds as to the rights of the respective parties to this controversy. The bulging of the exterior wall of the building certainly did not call for repairs to the interior of the premises, and the spur bracing of the south wall and the installation of " one inch and a half rods with turnbuckles between beams through to outside of both south and north walls, with stars and nuts," at a distance of six or seven feet apart on all stories, was certainly a repair to the exterior of the premises, and not embraced in the repairs which the tenant was required to make under said clause of the lease. By the 16th clause of the lease the parties had in mind a complete arrangement for necessary repairs. These repairs that were made would not come, in our opinion, under the term " ordinary repairs " to the interior of the premises. (*Warrin* v. *Haverty*, 159 App. Div. 840.) Clause (b) clearly indicates that the landlord was to make all exterior repairs, and was also to make such interior repairs, alterations and improvements in excess of the ordinary repairs for which the lessee was responsible. It is the contention of the plaintiff that the repairs in question were not structural. We regard them as unquestionably structural repairs. The repairs were not essentially different from those in the case of *Warrin* v. *Haverty* (159 App. Div. 840) where " the front wall [of the building] had to be anchored to the floor beams with star anchors to keep it from bulging." In that case this court held that " The changes thus made were structural in their nature." We are of the opinion that the repairs for which plaintiff asks reimbursement from defendant were not such, under the terms of the lease, as the defendant was required to make. The building was in no different condition at the time the repairs were made from that existing when the lease was made and when the defendant entered into the possession of the premises. The defendant was in nowise responsible for the bulging of the wall, but such bulging was caused by the defective foundations upon which the building rested.

Upon the stipulated facts the defendant is entitled to judgment declaring that it is under no liability to plaintiff. Judgment should be rendered accordingly in favor of defendant and against plaintiff.

FINCH., P. J., McAVOY, MARTIN and SHERMAN, JJ., concur.

Judgment directed in favor of defendant as indicated in opinion. Settle order on notice.