TAYLOR *v.* GUNN.

(*Nashville*, December Term, 1949.)

Opinion filed February 10, 1950.

PAUL CAMPBELL, of Chattanooga, for appellant.

WARDEN & WARDEN, of Manchester, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This suit originated in the chancery court wherein the complainant sought a declaratory judgment to determine rights of the parties under a lease contract.

The lease was for a term of 10 years beginning on November 1, 1946, and ending on October 31, 1956, the consideration being that the tenant was to pay a monthly rental of $500. The property which is covered by the lease contract consists of a two-story business house located in Tullahoma; it was about 50 years old. The tenant had occupied it himself for 40 years at least.

The pertinent parts of said lease are as follows, the same being Sections 2, 3, 4, 10 and 11:

"2. That the Lessee will keep in good repair and in first class condition, said premises and the improvements thereon, except the roof. That he will keep in good repair and condition, at his expense, all of the plumbing system and electrical wiring system therein, both upstairs and downstairs, and in the stairway. Lessee further covenants he will keep said entire building painted inside and outside in a nice and suitable manner. In addition to any other rights Lessor may have herein, the Lessor may, if Lessee fails to keep the above covenants in a satisfactory manner, have such repairs made and painting done, at the expense of Lessee, and Lessee agrees to pay Lessor therefor. However, any such action by the Lessor in making such repairs, or any failure of the Lessee to make the same, or to pay for any repairs made by the Lessor, shall not operate to release the Lessee from this lease or the covenants thereof.

"3. That the said Lessee will return said premises to the Lessor at the end of the term, in as good condition as received, except for any loss or damage thereto caused by reasonable use thereof or wear and tear.

"4. That the Lessee will not make any structural changes in said building, remove or change doors or partitions therein, unless the consent of Lessor thereto is given in writing."

"10. That in the event of the destruction of said building by fire or the elements, or the partial destruction thereof, the Lessor will immediately repair and rebuild said building and restore the same to its previous condition in as substantial manner as possible, provided materials and labor can be secured, or priorities granted, for such repair and rebuilding; and she reserves the right of entry on the premises for this purpose. This

lease shall not be forfeited or cancelled thereby, except that the payments due hereunder shall be suspended for such time as the premises are untenantable and for such time as Lessee's business therein is suspended. The terms of this lease shall be extended for such period of time as the rent is abated or suspended.

"11. That the Lessor will keep in good repair the roof of said building."

Following the execution of this lease the Fire Marshal of the State made a demand upon the landlord that the entire front wall of the building be razed and entirely rebuilt with certain structural changes, also that the present chimney flues on the property be closed and new ones constructed.

At the time the lease was signed there was no discussion between the tenant, Dr. Taylor, and his landlord, Mrs. Gunn, as to what repairs were considered necessary.

When the Fire Marshal made his demand on March 8, 1948, the building was in the same condition as when the lease was signed. There was an outward bulge in the front wall and, according to Dr. Taylor, that condition had existed "for at least twelve years". There were also some cracks in the wall.

The landlord, Mrs. Gunn, in compliance with the Fire Marshal's demand entered into a contract with Duckworth and Lewis, contractors, to tear out the front wall and rebuild the entire front of the store, all at a cost of $5,600. Prior to letting this contract Mrs. Gunn through her agent had notified Dr. Taylor that she expected to hold him responsible for the total expense incurred in complying with the Fire Marshal's demand. The lessee,

Dr. Taylor refused to admit his liability for the expense incurred, hence this suit.

The record conclusively shows that it was much more than a repair job. It was a replacement of the entire front wall of the store house in question. We pretermit the question as to the reasonableness of the cost as well as the authority of the Fire Marshal to require the work to be done.

The tenant occupied the building as a drug store during the time this construction work was in progress. It seems not to have seriously interfered with his business.

The Chancellor held that under the terms of the lease the tenant must pay for these improvements. An appeal was prayed and granted to the Court of Appeals and that court reversed the Chancellor, holding that the contract only required the lessee to make such repairs as might be necessary to carry out his agreement to "return said premises to the Lessor at the end of the term in as good condition as received, except for any loss or damage thereto caused by reasonable use thereof or wear and tear" as shown by Section 3 of the contract. It was further held that the contract must give effect according to the intention of the parties as they understood it and interpreted it, citing *Holmes* v. *Elder,* 170 Tenn. 257, 94 S. W. 2d 390, 104 A. L. R. 1282; *Dearing* v. *Brush Creek Coal Co.,* 182 Tenn. 302, 186 S. W. 2d 329. The conclusion reached by the court was that "The parties never intended for the expense of such changes to be borne by the lessee. They were expressly forbidden by the terms of the lease contract without the written consent of the owner."

The foregoing finding of fact is based upon Section 4 of the lease contract which provides: "That the lessee

(Dr. Taylor) will not make any structural changes in said building, remove or change doors or partitions, unless the consent of the lessor thereto is given in writing.''

We granted *certiorari* because the question involved was one of public interest and also of first impression in this State.

. We will not set out in detail the several assignments of error. They collectively raise but one question to-wit: whether or not, under the terms of the contract, the tenant is liable as a matter of law for the expense of making alterations, structural repairs and improvements to lessor's building as ordered by public authority. If the contract itself manifests a contrary intent that would be decisive of the question. But the petitioner, Mrs. Gunn says: ''Even if appellant lessee had not expressly and specifically covenanted and obligated himself, under the terms of the lease, to make and bear the expense of repairs, we think as between the parties the lessor would not have been obligated to make the repairs, unless she had contracted to do so.'' In support of the foregoing contention the petitioner has cited numerous decisions which deal with the common law rule governing the liability of the tenant for repairs. *Paye* v. *City of Grosse Point,* 279 Mich. 254, 271 N. W. 826; *Earle* v. *Shackleford,* 177 Ark. 291, 6 S. W. 2d 294; *Martinez* v. *Thompson,* 80 Tex. 568, 16 S. W. 334. And among our own cases are *Gooch-Edenton Hardware Co.* v. *Long,* 17 Tenn. App. 581, 69 S. W. 2d 254; and *Boyd* v. *McCarty,* 142 Tenn. 670, 222 S. W. 528.

We readily agree that our cases hold that under the common law there is no obligation resting upon the landlord to make repairs to leased premises unless the

lease contract so binds him. The rule which exempts him from liability relates to ordinary repairs which are deemed reasonably necessary to maintain the premises. Both the lessor and the lessee are bound by the terms of the contract. But where, following its execution, the city building inspector or other public authority demands that certain structural changes and improvements be made which are permanent and extensive and add materially to the value of the property, the duty to bear such an obligation rests upon the landlord and not upon the lessee, the repairs not being within the contemplation of the parties.

The case of *Banks* v. *White*, 33 Tenn. 613, relied on by the lessor, holds that "The law does not imply any warranty as to the continuing condition of the property demised", and where it is made untenantable by public authority the lessee is bound to pay future rent. In the instant case there was no damage to the right of occupancy. The case is only applicable here in that there is no implied warranty as to a continuing condition of the leased premises. The contract provided against liability in case of fire or tornado, but nothing is said about damage to the leasehold and the property due to public authority.

█ It is urged upon us by counsel for the lessor that pending negotiations for the lease the tenant stated to Mrs. Gunn's agent "Go ahead and write anything you desire in the contract, and I'll sign it"; that upon this declaration the tenant should be bound for the expense of repairs and alterations regardless of their nature and extent. But the answer to this insistence is that the lessor wrote into the contract the extent of the repairs for which she expected to hold the tenant liable, and that

nothing was said about who should bear the expense of repairs that were made necessary due to public authority. We think as did the Court of Appeals that such repairs were not within the contemplation of the parties.

Many authorities are cited by petitioner dealing with the question of when "alterations", or "structural changes", are of such a character that the tenant, under lease contract, must be held liable for the cost rather than the landlord. But regardless of the many cases holding that the tenant is liable for "repairs", "constructional changes", etc. in leased premises, where the contract does not expressly release him, we think that the cost of extensive repairs and alterations made pursuant to public authority, and which conclusively show a replacement of a substantial part of the leased building, are not chargeable to the tenant, but must be borne by the landlord. See *Borden* v. *Hirsh*, 249 Mass. 205, 143 N. E. 912, 33 A. L. R. 526, 527, and extensive annotations at page 530. The courts are not in full agreement as to whether the landlord or tenant must bear the cost of such repairs or improvements. In some cases liability is held to depend upon the nature and extent of the improvements as well as the use that is made of the premises. Numerous decisions are cited by the annotator as holding: "But where the alterations or improvements ordered by public authority are of the structural or substantial nature, the landlord instead of the tenant is ordinarily held to be liable where the tenant's covenant is merely to repair." To the same effect see *Goldwyn Distributing Corp.* v. *Carroll*, 51 App. D. C. 75, 276 F. 63; *Landgraf* v. *Kuh*, 188 Ill. 484, 59 N. E. 501; *Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427, 109 N. E. 545.

In *Younger* v. *Campbell,* 177 App. Div. 403, 163 N.Y.S. 609, cited in support of *Borden* v. *Hirsh, supra,* "the tenant covenanted to comply with all laws and orders of public authorities applicable to the premises for the correction, prevention or abatement of nuisances at his own expense". The fire commissioner ordered the installation of an iron stairway, fire escapes, fire proof inclosures and a fire alarm system. The court held that these "were not necessary repairs contemplated in the lease and the tenant should not be responsible for them". There seems to be a contrary holding in *Johnson* v. *Snow,* 102 Mo. App. 233, 244, 76 S. W. 675, where a lodger sued to recover damages for an injury, and it was held that it was the duty of the tenant to provide fire escapes as required by statute. See also *Clarke* v. *Yukon Investment Co.,* 83 Wash. 485, 145 P. 624, Ann. Cas. 1916E, 625.

In *Clark & Stevens* v. *Gerke,* 104 Md. 504, 65 A. 326, 327, the city authorities condemned the building as "a menace to the safety of persons or property", and the owners were directed to make the same "safe and secure immediately" as "required by [ordinance]". The tenant repaired the building and sued the landlord for reimbursement. It was held: "An agreement executed concurrent with a lease, whereby the lessee agreed to save the lessor harmless as to the costs of making certain changes recited in the lease, did not obligate the lessee to pay for the removal and rebuilding of a portion of the building leased made pursuant to the order of the inspector of buildings, where such repair and removal were not recited in the lease."

"A covenant to keep in repair imposes on the tenant an obligation merely to keep the premises in as

54

good repair as they were when the agreement was made."
Vol. 32, Century Digest, Section 540(k), citing: *St.
Joseph & St. L. R. Co.* v. *St. Louis, I. M. & S. Ry. Co.,*
135 Mo. 173, 36 S. W. 602, 33 L. R. A. 607; *Riesenfeld, Inc.*
v. *R-W Realty Co., Inc.,* 223 App. Div. 140, 228 N. Y. S.
145, affirming 127 Misc. 630, 217 N. Y. S. 306. *Thompson
St. Holding Corp.* v. *Sherwin-Williams Co.,* 234 App.
Div. 409, 255 N.Y.S. 299; see also annotations in 116
A. L. R. at page 1223.

Counsel for the lessor cite and strongly rely upon
*Martinez* v. *Thompson,* 80 Tex. 568, 16 S. W. 334, 335,
as supporting the decree of the Chancellor holding the
tenant liable.  In that case the tenant had leased a
building for the purpose of establishing a retail and
wholesale tobacco and cigar store.  It was stipulated in
the contract that the tenant should bear all the expenses
of repairing and improving the premises except the roof.
Subsequently the city authorities ordered the repair of
the side walls.  It appears from the opinion of the court
that due to the dilapidated condition of the building the
tenant rented it at a price far below its value.  In order
to put it in tenantable condition Martinez had it repaired
at a cost of $3,000.  The cost incident to repairs made
by city authorities was $888.29.  The court found as a
fact that it was necessary to make alterations or addi-
tions "to fit the house for the business which he (Mart-
inez) contemplated carrying on in it".  We think the
foregoing finding of facts supports the court's conclusion
that since the tenant expended $3,000 to make the build-
ing suitable for his purpose it was not unreasonable
that he should be required to bear the expense of a much
smaller sum to meet the requirements of city author-

ities and especially so since the lessor ordered him to pay it or move out. The tenant elected to remain.

We think it is clear from the record before us that the improvements made in the instant case were not contemplated in the lease contract. They were extensive and costly beyond what might have been reasonably expected at the beginning of the term. The Court of Appeals made the observation, and we think correctly, in discussing the intention of the landlord and tenant: "The improvements which were made by the owner constituted major structural changes in the building. The parties never intended for the expense of such changes to be borne by the lessee. They were expressly forbidden by the terms of the lease contract without the written consent of the owner. Such changes were never contemplated nor mentioned in the negotiations which led to the execution of the lease. Had such changes been mentioned at the time of the execution of the lease contract, we have no doubt that the parties would have readily agreed that the expense of same would be borne by the lessor and not by the lessee."

We are satisfied that the Court of Appeals reached the correct conclusion and its decree is accordingly affirmed.

All concur.