IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 15, 2011 Session

# C.F. PROPERTY, LLC v. RACHEL SCOTT ET AL.

**Appeal from the Chancery Court for Sullivan County**
**No. K0035784(C)      E. G. Moody, Chancellor**

**No. E2010-01981-COA-R3-CV-FILED-SEPTEMBER 27, 2011**

This is a landlord-tenant dispute involving commercial property with a known and disclosed "leaky roof." The lease states that the "property" is leased "as is where is." In an email sent prior to the execution of the lease, the landlord stated it would "talk about" repairing the roof after the first year. The leakage increased dramatically after the first year. The tenant began withholding rent. The landlord filed an unlawful detainer action and the tenant filed a counterclaim for damages resulting from the leaky roof. A bench trial ensured. The court held that, by telling the tenant it would "talk about" repairing the roof, the landlord misrepresented that the roof was repairable when the landlord knew it could not be repaired, and that the landlord had a duty under the lease to repair the roof. The landlord appeals. We reverse the judgment and remand for a determination of the damages due the landlord under the lease.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Christopher D. Owens, Johnson City, Tennessee, for the appellant, C.F. Property, LLC.

Thomas A. Peters, Kingsport, Tennessee, for the appellees, Rachel Scott and Randy Scott dba Finishing Touch.

**OPINION**

I.

Helen So is the chief manager of C.F. Property, LLC, ("the Landlord"), the plaintiff in this action. The entity owns a commercial building at 117 Cumberland Street, Kingsport[1]. The building has a flat roof that is in a state of disrepair. There are approximately 9,000 square feet of industrial warehouse space under roof. In 2005, Ms. So asked for an estimate of the cost to repair the roof. She was told that it needed to be replaced. Ms. So commissioned realtor Charles Dotson to sell the building. She told the realtor that the roof had numerous leaks, that it would be expensive to fix, and that the property should be marketed "as-is/where-is." On or about May 6, 2006, Mr. Dotson showed the property to Rachel Scott and Randy Scott as a possible site for their metal refinishing business.

The Scotts are husband and wife. They call their business "Finishing Touch." We will refer to the Scotts and the business collectively as "the Tenants." The Tenants utilize large vats of chemicals into which the metals being refinished are dipped. Water leakage into the vats can dilute the chemicals and render them contaminated and possibly useless. When the Tenants were shown the building, they were told that it had two leaks, one at the front and one at the rear. Evidence of the leaks was visible in the form of catch basins and tell-tale signs overhead, although there is a dispute in the proof as to the number of catch basins being employed when the property was shown to the Tenants.

Nevertheless, the Tenants notified Mr. Dotson by email dated May 9, 2006, that they had chosen the property as the best site to accommodate their "rapidly growing business." The email further stated:

> Mr. Dotson, we propose to lease the Cumberland building for at least 3 years and would like options to renew for two more years. We propose a lease rate of $1,500 a month for the three year lease. We also ask for the option to purchase the building no later than five years from the execution of the lease, at today's offered price of $240,000 (to be negotiated *due to the leaky roof.*) . . .
>
> Randy's experience in metal fabrication and commercial construction could be helpful in determining a cost effective method of repair of the roof problems. He might be able to resolve those problems, possibly initiating repairs himself,

---

[1]The lease mistakenly lists the address of the property as 117 Commerce Street. The parties agree that the correct address is 117 Cumberland Street.

assuming the owner's approval, thereby delaying or eliminating any need for costly repairs.

(Emphasis added.)

Mr. Dotson met with the Landlord and responded by email dated May 10, 2006. He stated first that his client desired to sell the building rather than leasing it, but would lease it subject to certain "responses and requirements . . . [that] she does not intend to negotiate." The Landlord's "responses and requirements" included the following:

> she [*i.e.*, Ms. So as the representative of the Landlord] will not repair the roof the first year. . . . she will talk about doing it the second year
>
> she does not have a problem with Randy attempting to repair the roof but she won't help and he is responsible if he gets hurt
>
> [Ms. So] does not intend to be a facility or property manager and does not intend to repair or maintain the building. She is renting it under the same intent as if she was selling it . . . . it's leased as is, where is.
>
>                                  *    *    *
>
> . . . . If these requirements don't work for you . . . we need not go further.

(Paragraph numbering in original omitted.)

Mr. Dotson prepared a written lease. On May 31, 2006, the parties met in an office located in the subject building and signed the lease agreement. Section IV of the lease sets forth certain "Rights and Responsibilities of Lessor" as follows:

> A. Maintenance
>
> During the Term, Lessor's obligations shall include the following:
>
> 1. Building.

> Lessor leases property "as is where is" without accepting any obligation whatsoever to maintain the premises. Lessor has informed Lessee of that and has told the Lessee that 2 heaters in the warehouse do not work, that the dust collector probably does not work and has not been used during the Lessor's term of ownership, that the roof in the back part of the building leaks and the owner does not plan to repair it.
>
> *   *   *
>
> C. Mechanicals Warranty.
>
> Lessor hereby makes clear that Lessor has no intent to maintain the infrastructure of the building. Lessor's intent was to sell the building in it's [sic] current condition.

(Bold type and italics in original omitted.)

The Tenants moved equipment into the building in 2006. They paid the rent regularly from May 2006 through June 2007. In June 2007, they relocated their business into the building. Shortly thereafter, the roof developed additional leaks. Randy Scott attempted unsuccessfully to repair the leaks. In the summer of 2007, the Tenants, at the Landlord's request, obtained an estimate for replacing the roof. The cost of replacing the roof was approximately $75,000. The Landlord refused to replace the roof. The roof continued to deteriorate to the point that eventually there were approximately 80 leaks covering approximately half the area of the building.

The Tenants tried to cope with the leakage through an elaborate system of tarps, funnels and catch basins. They began taking offsets from their rent for lost usable area as well as for their time and expense in dealing with the water. The Landlord disagreed with the offsets and filed an unlawful detainer action in general sessions court. When the case reached the trial court, the Tenants filed a counterclaim for damages, including lost profits, resulting from the leaky roof. Eventually, the case went to trial without a jury on the issues of the amount of rent owed and the counterclaim. The Tenants vacated the property as of the morning of trial.

The court made the following findings and conclusions that are pertinent to this appeal:

**FINDINGS OF FACT**

The lease defines the <u>premises</u> to mean the interior of the building consisting of 9380 sq. ft. . . . . .

\* \* \*

The lease defines the <u>property</u> to mean the land and the building.

The lease provides that the lessor leases the <u>property</u> "as is where is" without accepting any obligation whatsoever to maintain the <u>premises</u>.

\* \* \*

The [Tenants] did not inspect the roof prior to signing the lease but relied upon the statements of the [Landlord] and her real estate agent about the condition of the roof.

\* \* \*

It was not obvious to a lay person that the roof could not be repaired but that it would have to be replaced.

\* \* \*

The Court finds the testimony of the [Tenants] to be credible.

\* \* \*

Neither the [Landlord] nor her real estate agent told the [Tenants] that the roof could not be repaired and that it needed to be replaced before they signed the lease.

\* \* \*

**CONCLUSIONS OF LAW**

\* \* \*

Although there is a provision in the lease that the [Landlord] will not be responsible to maintain the premises (interior of the building), there is not a provision about maintaining the roof; therefore, an ambiguity exists as to whose responsibility it is to repair the roof.

Although the [Landlord] had no duty to repair or replace the roof in the lease agreement, she agreed to discuss the repair of the roof after the first year. The [Landlord] even requested that the [Tenants] obtain an estimate to replace the roof in 2007 which was after the first year. The Court finds that the [Tenants] expected the [Landlord] to make reasonable efforts to repair the roof after the first year based on her promise. The [Landlord] refused to replace the roof and made no efforts to repair it even though she knew the condition of the roof rendered the building unfit for the [Tenants'] business which refusal was unreasonable under all of the circumstances.

The [Landlord] and her real estate agent admitted that they did not disclose to the [Tenants] that there were four leaks when the lease was entered into. The [Landlord] had superior knowledge of the condition of the roof since she had obtained an estimate to replace the roof in 2005 and knew that it needed to be replaced and that it was not repairable. The Court finds that the [Tenants] would not have entered into the lease if they had been informed that the roof needed to be replaced and was not repairable. The [Tenants] thought there were only two leaks and they thought that they could repair them. The [Landlord] knew there were at least four leaks and she knew that the roof was not repairable. The [Landlord] misrepresented the roof as being repairable by agreeing to discuss repairing it after the first year.

Since the leaks got considerably worse the latter part of October 2007, since the leaks affected approximately one half of the building and since the [Tenants'] annual income had decreased

-6-

more than half, the [Tenants] should only be responsible for one half of the rental after October 2007 as a matter of equity. . . .

Since the [Landlord] has continued to occupy approximately one tenth of the square footage of the premises, the rental should be reduced by an additional ten percent (10%). . . .

*   *   *

The Court finds that the [Landlord] is entitled to Twenty Five Thousand Four Hundred Twenty Five Dollars ($25,425) for rent, [plus] . . . reimbursement for utilities and . . . reimbursement for taxes for a total of Thirty Thousand Five Hundred Seventy Seven Dollars and Fifteen Cents ($30,577.15).

The Court finds that the [Tenants] are entitled to Sixty Nine Thousand Dollars ($69,000) for loss of income and One Hundred Thirty Five Thousand Dollars ($135,000) for the replacement and disposal costs of their chemicals for a total of Two Hundred and Four Thousand Dollars ($204,000).

Therefore, after offsetting the [Landlord's] damages against the [Tenants'] damages, the [Tenants] are entitled to a judgment of One Hundred Seventy Three Thousand Four Hundred Twenty Two Dollars and Eighty Five Cents ($173,422.85) against the [Landlord] on their [counterclaim]. . . .

As suggested by the [Tenants] "Where one of two persons must suffer a loss, he should suffer whose act or negligence occasioned the loss.  This maxim applies to any person who, even innocently, misleads a third party to his detriment." (Gibson's Suits in Chancery, 7th ed. p.31).

(Capitalization, bold print and underlining in original; paragraph numbering in original omitted.)

The court entered judgment in accordance with its opinion.  The Landlord appeals.

-7-

II.

The Landlord raises the following issues taken verbatim from its brief:

> Whether the trial court erred in its interpretation of the lease agreement's provisions as to, and application of the law as to, the responsibilities of the Lessor to repair and or maintain the subject building.

> Whether the trial court erred in finding that [the Landlord] engaged in misrepresentation.

III.

When a trial court sits without a jury, as in this case, we review findings of facts *de novo* upon the record accompanied by a presumption of correctness that we must honor unless the preponderance of the evidence is against those findings. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). "Questions of law . . are reviewed de novo with no presumption of correctness." *Id*. The interpretation of a written lease is a question of law. *APAC-Tennessee, Inc. v. J.M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. Ct. App. 1986); *see  Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

IV.

The Landlord argues that the trial court overlooked fundamental landlord-tenant law in finding that it had an obligation to repair or replace the roof in the absence of an express agreement in the lease to do so. The Landlord further argues that the lease expressly disclaims any obligation to repair or replace the roof, and that the trial court seemingly so found, but then held to the contrary. The Tenants argue that the trial court correctly found that the Landlord disclaimed responsibility for maintaining the "premises," defined as the interior of the building, but did not disclaim responsibility for maintaining the "property," defined as the land and building. We agree with the Landlord.

In the absence of an express agreement, a landlord is not obligated to repair or to keep in repair a leased building. *Evco Corporation v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975); *Boyd v. McCarty*, 222 S.W. 528, 529 (Tenn. 1920);*Gooch-Edenton Hardware Co. v. Long*, 69 S.W.2d 254, 257 (Tenn. Ct. App. 1933). As the Supreme Court stated in *Evco*:

> We recognize that ordinarily, as between the landlord and tenant, the lessor has no obligation to make repairs upon leased premises. His obligation to do so, in general, rests upon contract.

*Evco*, 528 S.W.2d at 23.

Our research indicates that *Evco* has been cited approvingly on one point or another over 100 times, with no "negative" treatment. The Tenants do not even argue that *Evco* is an incorrect statement of the law. Thus, our starting point is that, unless the Landlord in the present case agreed in the lease to repair or replace the roof, it did not have that obligation.

The trial court made conflicting statements on the issue of responsibility for repairing the roof. At the outset of its legal analysis, the court stated that "an ambiguity exists [in the lease] as to whose responsibility it is to repair the roof." One paragraph later, the court stated that, "*the [Landlord] had no duty to repair or replace the roof in the lease agreement . . .*" (Emphasis added.) Since the court ultimately held the Landlord liable for damages caused by the leaking roof, we must assume that the court followed the "ambiguity" theory to the end result of that finding, which was, ultimately, the legal conclusion that the Landlord, in fact, did have a duty to repair or replace the roof.

Even after giving due deference to the trial court's findings of credibility, we must hold that the lease does not impose a duty on the landlord to repair the roof. Even if the disclaimer of "any obligation whatsoever to maintain the premises" is read narrowly to refer only to the interior of the building, other language in the lease unambiguously proclaims that the Landlord is not willing to spend money on the building by making repairs or renovations. We note that the disclaimer language we have just quoted follows unequivocal language that includes a disclaimer about the entire property, *i.e.*, *"Lessor leases property [i.e.,"the land and building"] 'as is where is'* without accepting any obligation whatsoever to maintain the premises." (Emphasis added.) In other words, everything that follows the word "without" is only further elaboration on the disclaimer. Our conclusion is supported by the language in the same paragraph that states "the roof in the back part of the building leaks and the owner does not plan to repair it." Also, under the section dealing with "Rights and Responsibilities of Lessor" the lease clearly states, "Lessor hereby makes clear that Lessor has no intent to maintain the infrastructure of the building. Lessor's intent was to sell the building in it's current condition." In this context, the ordinary usage and meaning of the term "infrastructure" is "the set of interconnected structural elements that provide the framework for supporting the entire structure." WordiQ.com (http://www.wordiq.com/definition/Infrastructure). This would necessarily include the roof.

Thus, we conclude that the language within the four corners of the lease makes it clear that the Landlord was not accepting the obligation of repairing or replacing the roof.

Even if one could reasonably conclude that the lease is ambiguous – again, we hold that it is not – we find that the parol evidence preponderates in favor of the conclusion that the Landlord made it clear that it did not intend to repair the roof and demanded that the Tenants accept that "requirement." The Tenants' proposal to lease the property clearly shows that they knew the building had a "leaky roof." The Landlord's response, through the realtor, was a "take it or leave it" proposition that the Tenants obviously accepted. The Landlord's "requirements" for leasing the property include the following:

> [Ms. So, as the representative of the Landlord] does not intend to be a facility or property manager and does not intend to repair or maintain the building. She is renting it under the same intent as if she was selling it . . . it's leased as is, where is.

Almost identical language is contained in the lease, which strengthens our conclusion that the "take it or leave it" proposition posed by the Landlord was accepted and memorialized in the lease. We hold that the trial court erroneously concluded that the Landlord had a duty under the lease to repair the roof.

It is true that the Landlord's email response included the statement that it "will not repair the roof the first year . . . she will talk about doing it the second year." However, there is no way a promise to "talk about" repairing the roof could overcome the general common law we have discussed and the clear language in the lease. Thus, unless the promise to "talk about . . . it" amounts to a misrepresentation as found by the trial court, the Landlord is not liable for damages caused by the leaky roof. We now move to the "misrepresentation" issue.

The trial court found that the Landlord "misrepresented the roof as being repairable by agreeing to discuss repairing it after the first year." The court also found that the roof was not repairable and that the Landlord knew it was not repairable. The court imputed superior knowledge to the Landlord and found that the Landlord therefore failed to disclose the unrepairable state of the roof.

The evidence preponderates against the trial court's findings. The Tenants simply knew too much to bury their head in the sand and assume that the Landlord would abandon all the disclaimers in the lease and decide at the end of one year to repair or replace the roof. The Tenants knew the roof leaked. They knew the leaks were so bad that the Tenants demanded a concession on the purchase price in the event they exercised a proposed option

to purchase. Mr. Scott, who claimed some degree of expertise in "metal fabrication and commercial construction" knew that leaks in roofs do not get better over time but rather get worse. The Tenants knew there was at least one leak in the back of the building and one leak in the front of the building. They knew that their business required a building that did not leak. By the testimony of Mr. and Mrs. Scott, the roof had the same exact leaks one year after they signed the lease that it had when they signed it. The Tenants admitted that they did not inspect the roof prior to executing the lease or hire any professional to inspect it.

With all their knowledge, especially in light of the clear disclaimers in the lease, it was not reasonable for the Tenants to simply close their eyes to the known facts and rely on one statement that the Landlord would "talk about . . . it" to conclude that (1) the roof need not be replaced but could be repaired and (2) the Landlord would repair it. This Court has held that "[a]n essential [element] of any action for fraud, deceit, failure to disclose or negligent or innocent misrepresentations is detrimental reliance on a false premise." *McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005)(*quoting* *Williams v. Berube & Associates*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)). The reliance must be justifiable, or reasonable. *Id*. "Justifiable reliance . . . is *not* blind faith." *Id*. (emphasis in original). The trial court did not address the *reasonableness* of the Tenants' expectations directly as far as we can tell. It only addressed what the Tenants "expected," which was for the Landlord to do an "about face" after a year and fix the roof. It is our conclusion that blind faith was abundant in the Tenants' expectations and reasonable reliance was lacking. We hold that the trial court erred in finding the Landlord liable to the Tenants on the basis of a misrepresentation.

V.

The judgment of the trial court is reversed. Costs on appeal are taxed to the appellees, Rachel Scott and Randy Scott. This case is remanded, pursuant to applicable law, for a recalculation of the damages due Landlord and such other proceedings as are necessary and consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

-11-