**Walter Ronald HUTCHISON,
Plaintiff-Appellee,**

v.

**Laurence G. (Bucky) TEETER and
wife, Carol Teeter,
Defendants-Appellants.**

Supreme Court of Tennessee,
at Nashville.

March 18, 1985.

Richard H. Batson, F. Evans Harvill, Clarksville, for plaintiff-appellee.

Frank J. Runyon, Clarksville, for defendants-appellants.

## OPINION

HARBISON, Justice.

In this personal injury action the Court of Appeals reversed a jury verdict for the defendants, appellants here, because of error in the jury instructions. After review of the record and of the instructions given, we concur in the result reached by the Court of Appeals and remand the cause for a new trial.

Because the case is to be re-tried, a detailed statement of the evidence is not necessary. There were discrepancies in the testimony of the parties and witnesses, presenting a proper case for jury determination. The issues were close, so that correct jury instructions were particularly important. *See Boyd v. Boyd*, 680 S.W.2d 462 (Tenn.1984). For this reason also we agree with the Court of Appeals that the errors committed were sufficiently serious to warrant a retrial.

Appellee, Walter Ronald Hutchison, was a backhoe operator employed by James N. Hogue. He sustained the personal injuries for which the action was brought when his backhoe punctured a private propane gas line on property owned by appellants, Laurence G. Teeter and wife, Carol Teeter, on November 14, 1979. Appellee was instructed to dig footings for three pairs of concrete pillars on which the metal legs for an elevated grain bin were to be anchored.

Appellee was operating the backhoe in a narrow space, not over thirty-five feet wide. This area lay between two large metal grain drying bins and the wall of a newly constructed grain processing shed on the premises. Through this area about two years previously there had been installed an underground feeder line from two large above-ground liquid propane fuel tanks, leading to a gas-operated grain dryer situated between and roughly parallel with the two metal drying bins.

On the evening before this work was undertaken, Mr. Teeter advised the general contractor, Mr. Simpson, and one of his employees, Larry Perry, that the line ran through the area where the footings were to be dug. There is material discrepancy between their testimony and his. Mr. Teeters testified that he did not know the exact location of the gas line and so advised Simpson and Perry. He said he told them that they might encounter the line and if so, they would have to dig it up and relocate it at his expense. They testified that he advised them that the line ran close to the end of a concrete footing on which the dryer was situated, and they believed this to be ten or twelve feet away from the area where the excavation was to take place. They accordingly advised appellee Hutchison when he arrived the next day that there were no underground obstructions where he was to dig the footings. They testified that they did tell him that there was a gas line in the general area, but both he and Mr. Hogue denied this.

It is conceded by appellants that liquid propane gas is dangerous in that it is liquified under pressure, vaporizes even at low temperatures and is highly flammable. Hutchison punctured the line in question while digging the second footing. Escaping vapor was ignited by a nearby fire maintained by the construction workers, and Hutchison was injured in the resulting explosion. Appellant Teeter was not present at the time of the incident, nor were any of his employees on the site. He did not know Hutchison or his employer Hogue, had no knowledge as to when or by whom the excavation would be done, and

had made arrangements for the work only with the general contractor.

■ Although the brief of his counsel refers to Hutchison as a licensee, in this state persons such as he have generally been held to be business visitors, and the trial court correctly instructed the jury to that effect in this case.[1] The general duty of a landowner to employees of a contractor or subcontractor performing work on his premises is set out in *Shell Oil Co. v. Blanks*, 46 Tenn.App. 539, 544, 330 S.W.2d 569, 571 (1959), as follows:

> "While there are cases to the contrary, the weight of authority is to the effect that the owner or occupier of the land, with certain exceptions, is duty bound to use reasonable care to provide a safe place in which an independent contractor and his employees can work."

■ In the present case the propane gas line was maintained by the owners and remained at all times under their control. We agree with the Court of Appeals that the trial judge therefore committed reversible error in instructing the jury that if control of the premises in question had been turned over to the contractor, the landowner would owe no duty at all to employees of the contractor or subcontractor. This instruction was not based upon any evidence in the case, there being no contention that control of the propane gas equipment had been entrusted to the contractor, or that the contractor was to perform any repairs or other work thereon. We agree with the Court of Appeals that this instruction could have misled the jury and that it was not appropriate.

■ We also agree with the Court of Appeals that the general principles governing the additional responsibility of a landowner to persons lawfully on the premises, such as employees of subcontractors, where the landowner conducts an inherently dangerous activity, are correctly set out in *International Harvester Co. v. Sartain*, 32 Tenn.App. 425, 222 S.W.2d 854 (1948). In that case it was made clear that the liability of a landowner in such a situation is based upon principles of negligence, and not strict liability or liability without fault. He is not an insurer, but the fact that he maintains a highly dangerous agency or instrumentality requires commensurate preventive or safety precautions. This duty is not delegable to others. If entrusted to others, such as a general contractor, the landowner can be held liable for their negligence or non-performance. Such cases "are thus cases of vicarious liability" and are exceptions to the general rule of non-liability for the actions of an independent contractor. P. Keeton, *Prosser and Keeton on Torts* 511 (5th ed. 1984); *Restatement (Second) of Torts* §§ 416, 427 (1965).

■ The trial judge generally so instructed the jury in the present case, including stating to them that the duty of the landowner to take appropriate preventive measures was not delegable. He declined a special request offered by counsel for appellee, however, to the effect that this duty could not be delegated to the general contractor so as to completely exonerate the landowner. We agree with the Court of Appeals that the requested instruction was a correct statement of the law and should have been given.

■ Under the circumstances of this case, the trial judge erred in giving appellants' Special Request No. 2, to the effect that they could be held liable only for their personal acts of negligence. This would be correct generally but is too restrictive when an inherently dangerous facility is maintained in the area of the work to be done. *See Keeton, op. cit. supra* 512–514.

We are of the opinion that the charge given by the trial judge was otherwise generally correct, and that it was sufficient for him to instruct the jury that the landowner had a nondelegable duty to take appropri-

---

1. In *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn. 1984) the common-law distinction between the duties of landowners to licensees and to business guests was abolished with respect to premises liability.

ate preventive measures. Such measures, of course, could include shutting off the propane gas system or seeing that reasonable warning was given to persons working near it. As stated previously, the liability of the appellants, if any, must rest upon principles of negligence—lack of ordinary reasonable care on their part or that of the contractor under all of the facts and circumstances. It is not strict liability even though the contractor and subcontractor were required to work in the vicinity of a dangerous agency such as a propane gas system.

The area where the landowner told the contractor the line lay was narrow and confined. It was not an open field. According to Mr. Teeter's testimony and to a diagram which he filed as an exhibit, one edge of the footings lay within five to six feet of the concrete base of the dryer. The contractor and his men outlined the area to be excavated in dry lime or cement, so that it was plainly visible on the surface of the ground. If the diagram is correct and if Mr. Simpson and his employee Perry did in fact tell Hutchison and his employer Hogue that a propane gas line lay between the marked area and the dryer base, then both Hogue and Hutchison had to know that the backhoe was being operated very close—within a few feet—to an underground propane gas line.[2]

Under all of the circumstances, negligence of the landowners, of their contractor and of the plaintiff and his employer, as well as proximate cause, are issues to be determined by the jury under proper instructions.

■ At trial appellants sought to amend their answer to assert the defense of contributory negligence, not previously affirmatively pled. The trial court disallowed the amendment as untimely. Since the case is to be re-tried, however, further consideration should be given to the proposed amendment, and it should be allowed if appellants seek to pursue the issue.

---

**2.** Hogue denied being told that there was a line in the area and said that if he had known, he would not have permitted Hutchison to excavate

The cause is remanded for a new trial. Costs incident to the appeal will be taxed to appellants.

COOPER, C.J., and FONES, BROCK and DROWOTA, JJ., concur.

without other measures being taken, such as shutting off the system.