Eddie R. MAXWELL and Wife, Mrs. Eddie R. Maxwell, Plaintiffs–Appellants,

v.

DAVCO CORPORATION OF TENNESSEE, Defendant–Appellee.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

May 18, 1989.

Application for Permission to Appeal Denied by Supreme Court
Aug. 7, 1989.

Ricco Gatti, Jr., Gatti, Keltner & Bienvenu, Memphis, for plaintiffs-appellants.

Douglas A. McTyier, Wilson, McRae, Ivy, Sevier, McTyier & Strain, Memphis, for defendant-appellee.

TOMLIN, Presiding Judge (Western Section).

Plaintiffs, Eddie Maxwell and Wife,[1] brought this negligence action against Davco Corporation (hereafter "Davco") in the Circuit Court for Shelby County to recover damages for personal injuries sustained by plaintiff while attempting to repair a garage door on a building leased by Davco to plaintiff's employer. Plaintiff's suit was based upon alleged negligence on the part of Davco in knowing of the defective condition of the door and in failing to correct the defects. The trial court granted Davco's motion for summary judgment. In his brief, plaintiff presents the following two issues to be considered on appeal: whether the trial court erred in granting summary judgment for Davco: (1) on the ground that Davco was not liable for defects arising on the premises after the date of the initial lease of February 4, 1975; and (2) on the ground that plaintiff was guilty of assumption of risk and/or contributory negligence. In ruling on Davco's summary judgment motion, the trial court did not grant the motion on either of the two above alleged grounds. We perceive the sole issue to be whether or not the trial court erred in granting summary judgment based upon the record before it. We find no error and affirm.

At the time of the accident the plaintiff was employed by Allstate Fabricating Cor-

---

1. Hereafter we will refer to Eddie Maxwell only as "plaintiff."

poration, a metal fabricating company in Shelby County. He had been employed as a maintenance man by Allstate for ten years. His duties included the maintenance and repair of machinery and equipment as well as maintenance of the building occupied by Allstate. Allstate leased this building from Davco, an engineering firm also located in Shelby County. Both Davco and Allstate are Tennessee corporations. All of the outstanding common stock of both Davco and Allstate is owned by Industry General Corporation, another Tennessee metal fabricating company. Ninety percent of the outstanding common stock of Industry General is owned by William H. Davenport, who serves as president of Industry General, Davco, and Allstate.

Plaintiff sustained severe injuries to his left hand and fingers while attempting to repair an overhead garage door of the shop, one of his regular maintenance duties. Plaintiff testified that during the entire time of his employment by Allstate until his release in the spring of 1986 Allstate had always been in the same building with the same overhead doors. He stated that the door which caused his injury was in good condition when he went to work for Allstate in 1975.

The uncontroverted proof was to the effect that while the doors were in good condition at that time, the doors became worn, warped, out of shape, and would periodically jump off the track, primarily as a result of misuse and abuse by Allstate's employees, requiring plaintiff to repair them. There was uncontradicted testimony from another witness to the effect that the principal cause of the wear and tear on these doors was the fact that they were run into repeatedly by Allstate employees driving forklift trucks. Allstate began to have trouble with the doors in 1977 or 1978, with the condition of the doors growing steadily worse over the years. When a door got off the track, it was plaintiff's duty to put it back.

According to plaintiff, he had occasion to repair the doors at least eight or ten times, and in fact had done it so often that he had developed a regular technique or routine to

follow when a particular problem arose. The malfunction of the door on the day of the accident in question was of a type that regularly occurred and was one for which plaintiff had developed a standard repair procedure.

Although there were a few technical differences in the several doors to the building, they bore many similar characteristics. The overhead garage door consisted of multiple horizontal panels connected to one another. At the end of each panel there were one or more sets of rollers which fit inside of a metal track, attached to the building and running vertically along each side of the door up to the ceiling, at which point it curved inwardly and ran horizontally back across the ceiling.

A metal shaft was affixed to the top of the door from one end to the other. Attached to this shaft were two springs and at each end of the shaft was located a pulley around which was wound a cable that served the function of raising and lowering the door. When the door was up, the springs had very little tension on them and the cables were wound around the pulleys. When the door was in the down position, the resulting tension caused the springs to tighten, which turned the shaft, causing the pulleys to rotate, thereby unwinding the cables so the doors could be lowered. The weight of the door itself forced it to remain down when tension was on the springs.

On the day of the accident, the shop supervisor advised plaintiff that the door was broken and he should fix it. Plaintiff observed from the inside that the cable on the right-hand side of the door was off the pulley, with the bottom on the right-hand side of the door almost on the floor, while the left side was about five to six inches off the floor. The springs and the cables were in satisfactory condition. Plaintiff stated that he was very familiar with the installation of this door, and that in order to get tension off the spring it was necessary to lift the lower end of the door. Plaintiff outlined the several steps to be taken as follows: He would first install a steel shaft approximately eight inches long

and five-eighths inch in diameter into a hole in the hub of the spring to prevent it from rotating. Next, he would level the door, put the cable back on the pulley, take the rollers off, then put them back in the track. At this point he would remove the pin, permitting the door to roll up.

To do the repairs, plaintiff had climbed up the cross members of the frame of the door to the door's top. He had placed the pin in the spring, which had rotated sufficiently to where the pin rested against part of the building, holding it in place. He then leveled up the door and was in the process of putting the cable onto the pulley when, as he put it, "something popped." At this point the cable tightened, catching some of the fingers of his left hand under it. With the use of a cutting torch, plaintiff cut the cable, permitting him to extricate his hand.

At the time plaintiff gave his deposition he testified that neither he nor anyone else knew exactly what happened. He thought, but did not know for a certainty, that possibly the spring or the pin had broken. Later, at the time the motion for summary judgment was argued, counsel for plaintiff and Davco stipulated that if plaintiff were permitted to sign an affidavit, he would state in effect that what he thought happened was that a fellow employee of Allstate was using a forklift to hold the door up, and that either the forklift came down or the employee let it down, causing the door to fall, thereby setting off the chain of events resulting in the loss of his fingers.

In addition to plaintiff's testimony, there was testimony by other Allstate employees that just prior to the accident a forklift was outside the building with its forks under the lower end of the door. However, there was no testimony to the effect that the forks were holding the door up or that the forklift was actually used to level the door. It should be noted in addition that plaintiff at no time testified as to the role of the forklift in this operation at the time he gave his deposition.

In addition, there was testimony to the effect that while plaintiff had spoken to his superiors about having the doors replaced, he had never talked to Davenport, Allstate's president, about the door. However, a retired employee of Allstate testified he had told Davenport that the door needed to be replaced.

In ruling on motions for summary judgment, both the trial court and this Court must consider the matter in the same manner as a motion for a directed verdict made at the close of plaintiff's proof—i.e., we must view all affidavits and other testimony in the light most favorable to the opponent of the motion and draw all legitimate conclusions of fact therefrom in favor of the opponent. If after so doing a disputed issue of material fact is established, the motion must be denied. *Stone v. Hinds*, 541 S.W.2d 598 (Tenn.App.1976). If the pleadings, stipulations, depositions, and affidavits show no genuine issue of material fact exists, and if the record reveals no error of law, the moving party is then entitled to summary judgment. *Phillips v. Pittsburgh Consolidated Coal Co.*, 541 S.W.2d 411 (Tenn.1976).

The trial court below had before it not only the pleadings, but answers to interrogatories and requests for production of documents, and the depositions of plaintiff, Davenport, other employees and former employees of Allstate. The trial court found that Allstate, Davco's tenant, was as well aware of the door's condition as was Davco, and further, that Allstate had agreed in its lease with Davco to hold Davco harmless for all damages, accidents, and injuries that occurred on the leased property.

The common law of landlord liability in Tennessee has long been established. In this state, a landlord is liable to a tenant on the ground of negligence, not of contract, for an injury resulting from an unsafe or dangerous condition of leased premises that was in existence at the date of the lease, if the landlord by the exercise of reasonable care should have known, and for a greater reason, if he had actual knowledge of the condition of the premises; provided, however, that as of the date of the accident the tenant did not have knowledge or could not by the exercise of reason-

able care have had knowledge of such condition. *Manes v. Hines & McNair Hotels, Inc.*, 184 Tenn. 210, 197 S.W.2d 889 (1946); *Roberts v. Tennessee Wesleyan College*, 60 Tenn.App. 624, 450 S.W.2d 21 (1969); *Smith v. Roane–Anderson Co.*, 30 Tenn. App. 458, 207 S.W.2d 353 (1947). However, the landlord is not liable in tort for dangerous conditions on premises leased to the tenant arising after the delivery of possession to the tenant. *Wilcox v. Hines*, 100 Tenn. 538, 46 S.W. 297, 301–02 (1898); *Tedder v. Raskin*, 728 S.W.2d 343, 347 (Tenn. App.1987).

Applying the above principles of law to the facts of the case at bar, viewing the record in the light most favorable to plaintiff, clearly the defects complained of occurred after Allstate went into possession of the premises under the lease.

THE LEASE AND ITS EFFECT

The lease between Davco and Allstate, duly executed by both parties, commenced on February 4, 1975, prior to plaintiff going to work for Allstate. It provided that the term was "to run continuously and adjusted annually until either party cancels."

In addition, the lease contains two pertinent paragraphs affecting Davco's liability. The first is paragraph 17, entitled "Damages, Accidents, Etc.," which reads as follows:

> To hold Lessor harmless against all damages, accidents, and injuries to persons or property caused by or resulting from or in connection with any power plant, machinery, elevator, elevator shaft, stairway, signs, awnings, glass, brick, and other building material, hatch, coal chute or other openings, flag pole, and any other things in or pertaining to any other parts of said premises, or things in or pertaining to or upon the premises during the term of this lease or while the Lessee is occupying the premises;

The other is paragraph 31, entitled "Roof," which states:

> Lessor agrees to keep the roof of leased premises in good repair provided the need of repair is not caused by the acts of Lessee, but Lessor shall not be held or deemed liable for any damages to Lessee because of roof leaks. Lessor will use reasonable diligence to correct roof leaks. All other repairs to be made by Lessee at Lessee's expense.

The terms and provisions of the lease agreement between Davco and Allstate provides that all repairs to the premises except for the roof are to be made by Allstate, and in addition, the hold harmless agreement found in paragraph 17 eliminates any basis for subjecting Davco to liability in this case.

In seeking to avoid the legal implications of the inevitable conclusion that the alleged defective condition of the door arose after the tenancy began, plaintiff asserts that the language setting forth a continuous term with rent adjustments annually converted the lease into a periodic tenancy of either year to year or month to month. After developing this premise, plaintiff cites authorities from other states which hold that in the event of a periodic tenancy, the landlord technically but for a moment re-enters and takes possession of the premises prior to the beginning of the subsequent tenancy. Thus, any defective condition then and there existing would be said to have existed prior to the beginning of the tenancy, and the landlord would be charged with knowledge of same and under the facts in this record would not have informed the tenant of its existence.

■ We find it unnecessary to wander into this briar patch, for there is admittedly a split of authority among our sister states who have passed on this question. We need not do so by reason of the fact that in the case at bar William Davenport, the president of Lessor, Davco, is also president of Lessee, Allstate. Thus, knowledge of any condition of the premises imputed to Davco through Davenport is also imputed to Allstate through Davenport. This co-extensive knowledge of the existence of any defective condition by both Lessor and Lessee would negate any liability on the part of Lessor.

While not called upon to do so, if the trial court had ruled that plaintiff's action was barred as a matter of law on the grounds of proximate contributory negligence, in light of the absolute, thorough, unequivocal, long-standing knowledge that plaintiff had of the condition of this door and the ways and means of repairing it, under the authority of *Manes v. Hines & McNair Hotels, Inc.*, 184 Tenn. 210, 197 S.W.2d 889 (1946), we would have been compelled to affirm the trial court on this ground as well.

For the reasons stated, the judgment of the trial court is affirmed. Costs in this cause are taxed to plaintiff, for which execution may issue if necessary.

CRAWFORD, J., and DORAN, J., Retired, concur.