Larry Don PIKE, Jr., b/n/f and legal guardian, Linda HANCOCK; and Linda Hancock, Individually, Plaintiffs,

v.

Ruben SHADDEN, and wife, Bobbie Shadden, both individually and d/b/a Shadden's Dairy Farm, Defendants.

No. 1:93–cv–110.

United States District Court, E.D. Tennessee, S.D.

Feb. 8, 1994.

Mark E. Floyd, Pryor, Flynn, Priest & Harber, Knoxville, TN, for plaintiffs.

Michael R. Campbell, Campbell & Campbell, Chattanooga, TN, for defendants.

*MEMORANDUM*

EDGAR, District Judge.

In this diversity action, plaintiffs seek to recover for the injuries that minor plaintiff Larry Don Pike, Jr. sustained at defendants' dairy farm. Presently before the Court is defendants' motion for summary judgment. For the reasons that follow, defendants' motion will be DENIED.

## I. *Facts*

On December 11, 1988, a feed auger in a barn on defendants' dairy farm amputated the lower leg of minor plaintiff Larry Don Pike, Jr. At the time of the accident, Larry Pike was nine years old and living with his step-grandfather, Vivian Roy Hancock, and grandmother, Linda Hancock, in a tenant house on the defendants' farm. Mr. Hancock worked as an employee on the farm, and as part of his employment, he and his family were allowed to live in the tenant house. This tenant house had a small yard which was enclosed by a fence. The house was approximately 150 to 200 feet from the feed barn where the auger was located. According to Mr. Hancock, he had no written lease with defendants, and the feed barn was not a part of the premises where he and his family lived. At the time of the accident, the Hancock's and Larry Pike had lived in the tenant house for over two years.

Larry Pike went alone to the feed barn on December 11, 1988 intending to do his grandfather a favor by starting to feed the cattle prior to his grandfather's arrival at the barn. Inside the barn was an auger, which transported silage from the silo into the feeding trough for the cattle. The auger was uncovered at all times relative to this case. After turning on the auger and while the auger was running, Larry Pike attempted to step across it so as to reach some hay located on the other side of the barn. As he made this attempt, his leg became caught in the auger, resulting in the traumatic amputation of his leg.

Prior to the accident, Larry Pike had assisted his grandfather and defendant Ruben Shadden do work in the feed barn. Accord-

530

ing to plaintiffs, Mr. Hancock and Mr. Shadden had stepped across the running auger in Larry Pike's presence.

According to defendants Mr. Shadden, Mrs. Shadden, Mr. Hancock, and Mrs. Hancock had warned Larry Pike of the dangers of the auger. Plaintiffs respond that Mr. Shadden's alleged warnings are suspect because he cannot recall a specific instance when he warned Larry Pike. Plaintiffs also respond that Mrs. Shadden only generally warned about the dangers of the barn and not the dangers of the auger.

Plaintiffs filed the present action claiming negligence on the part of defendants.

## II. Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides that summary judgment will be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n,* 909 F.2d 941, 943 (6th Cir.1990); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *60 Ivy Street,* 822 F.2d at 1435–36.

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White,* 909 F.2d at 943–44; *60 Ivy Street,* 822 F.2d at 1435. The

moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

## III. Analysis

Defendants' move for summary judgment on the ground that this case is controlled by *Helton v. Reynolds,* 640 S.W.2d 5 (Tenn.Ct. App.1982). In *Helton,* like the present case, a family moved into a tenant house on a farm. Ten feet behind the house was a large open pit dug in preparation for laying a field line for the house's septic tank. The tenants asked the landlord farmer about the pit, and the landlord replied that he had been meaning to fix it and would soon do so. Before he fixed it, however, a two-year-old child in the tenant family fell into the pit and drowned.

In the tenant's subsequent suit, the court held that the landlord was not liable for the death because the danger of the open pit was as obvious to the tenants as it was to the landlord. *Id.* at 8. In reaching this conclusion, the court applied the Tennessee rule, without clearly stating it, that a landlord is liable to a tenant on the ground of negligence for an injury resulting from an unsafe or dangerous condition that existed at the date of the lease if the landlord knew of the unsafe or dangerous condition and concealed it, or should have known of the unsafe or dangerous condition, "provided, however, that as of the date of the accident the tenant did not have knowledge or could not by the exercise of reasonable care have had knowledge of such condition." *Maxwell v. Davco Corp.,* 776 S.W.2d 528, 531–32 (Tenn.Ct.App.1989); *see Hines v. Wilcox,* 96 Tenn. 148, 160, 33 S.W. 914 (1896) (stating latter part of rule as "provided reasonable care and diligence is exercised by the tenant on his part"), *cited in, Helton,* 640 S.W.2d at 8. The Court also cited the *Restatement of Torts* § 356 for the proposition that a landlord is generally not liable to either a tenant or others who may come onto the premises for injuries caused by obvious defects. Thus, in the present case, defendants contend that because Mr. and Mrs. Shadden and Mr. and Mrs. Hancock in-

formed Larry Pike of the dangers of the auger, Larry Pike knew of the danger when he stepped across the auger, and accordingly, the defendants are not liable to the plaintiffs as a matter of law.

Plaintiffs, on the other hand, respond that *Helton* is not controlling in this case. Plaintiffs argue that the landlord/tenant law of *Helton* is inapplicable in this case because Larry Pike was injured in the feed barn which was not a part of the leased premises. Furthermore, plaintiffs argue that even if landlord/tenant law applies, the rule that the obviousness or the tenant's knowledge of the danger bars recovery does not apply in this case under the *Restatement of Torts* § 360. In any event, plaintiffs argue that unlike in *Helton* a genuine issue of fact exists as to whether the danger of the auger was obvious or known to Larry Pike.

■ Landlord/tenant law does not govern this case. The injury occurred not on the leased premises, but approximately 150 to 200 feet away in a feed barn that served as Mr. Hancock's place of employment and over which Mr. Shadden retained control. Here, a grandson of an employee travelled a short distance from his home to his grandfather's place of employment and there suffered an injury. Under these circumstances, the landowner or proprietor, owes the grandson, an invitee, a "duty of reasonable care under all of the attendant circumstances." *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn.1984); *see Smith v. Inman Realty Co.*, 846 S.W.2d 819, 823 (Tenn.Ct.App.1992).[1]

■ Even under landowner, *Hudson v. Gaitan*, law, however, Tennessee courts have held that a landowner " 'will not be held liable [to an invitee] if the dangerous or defective condition is obvious, reasonably apparent, or as well known to the invitee as to the owner.' " *Roberts v. Roberts*, 845 S.W.2d 225, 227 (Tenn.Ct.App.1992) (quoting *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980)). Thus, courts have recognized an "obviousness" bar to recovery under landowner law similar to that under landlord/tenant law.

■ An issue, however, exists as to whether obviousness is a complete bar to recovery in the wake of *McIntyre v. Balentine*, 833 S.W.2d 52, 53 (Tenn.1992). In *McIntyre*, the Tennessee Supreme Court abandoned the "outmoded and unjust common law doctrine of contributory negligence" and replaced it with a modified comparative fault system. *McIntyre*, 833 S.W.2d at 56. Under this comparative fault system, a plaintiff may recover so long as his negligence remains less than that of the defendant's. *Id.* at 57. The jury decides the degree of fault attributable to the plaintiff based upon the plaintiff's contributory negligence, if any. *Eaton v. McLain*, No. 03A01–9304–CV–00152, 1993 WL 286071, at *7 (Tenn.Ct.App. July 29, 1993), *perm. appeal granted*, Oct. 25, 1993. No longer does the plaintiff's contributory negligence, if less than the defendant's negligence, serve as an absolute bar to his recovery.

■ The obviousness bar described above essentially amounts to a contributory negligence defense. *See Tennessee Pattern Jury Instructions—Civil* § 9.21, Use Note (2d ed. 1988) (explaining that the defense of "contributory negligence" is preserved in the jury instruction that a landowner is not liable to a person for injuries from a condition that was known or obvious to the injured person). Like contributory negligence, the bar would preclude a plaintiff from recovering, notwithstanding the negligence of the defendant, when the plaintiff acts without due care for his own safety. Thus, in light of *McIntyre* and because the obviousness bar is tantamount to common law contributory negli-

1. This is not a case to which the *Restatement of Torts* § 360 should be applied. Section 360 refers to situations where a tenant becomes injured on a part of land that the landlord continues to control but the tenant is "entitled to use." Such parts of land typically include elevators, hallways, or stairs in an office or apartment building. Restatement (Second) of Torts § 360 cmt. d; *see Tedder v. Raskin*, 728 S.W.2d 343, 347–48 (Tenn.Ct.App.1987) (discussing landlord's duty with respect to "common areas" used by different tenants). In this case, the feed barn was not a part of the defendants' land that minor plaintiff Larry Pike was "entitled to use." As noted above, and as distinguished from parts of land such as stairs or hallways, the feed barn was a separate place of employment and part of defendants' business. It was not on the defendants' land for the mere "use" of Larry Pike or any tenant.

**532**

gence, this Court concludes that the obviousness bar of landowner liability law has been subsumed by comparative fault. *See Inman Realty Co.,* 846 S.W.2d at 824 & n. 7 (recognizing that principles of comparative fault apply in determining the liability of a possessor of land to an invitee); *see also Eaton,* 1993 WL 286071, at *7 (holding that "step in the dark" and "proceeding in the dark" defenses amount to common law contributory negligence and therefore have been subsumed by comparative fault).

There are genuine issues of fact remaining for any determination of comparative fault. There is evidence that Mr. Shadden and Mr. Hancock generally warned Larry Pike that the auger was dangerous, but the extent of Larry Pike's awareness of the danger is at issue in light of his testimony that no one had ever told him how the auger could hurt him and that he did not know better than to attempt stepping across the auger. Furthermore, plaintiffs' evidence that Mr. Hancock and Mr. Shadden had stepped across the auger in Larry Pike's presence could raise the inference that the dangerousness of the auger and that particular activity were not obvious to Larry Pike.[2]

Likewise, it is disputed whether the defendants should have anticipated the harm even if they had warned Larry Pike of the auger's danger. Larry Pike was only nine years old at the time of his injury. This could raise an inference that defendants should have known that Larry Pike might not understand the auger's danger even though warned. Furthermore, according to plaintiffs' evidence, Larry Pike occasionally assisted Mr. Shadden and Mr. Hancock do work in and around the feed barn, and Mr. Shadden was aware that at times Larry Pike went into the feed barn.

Accordingly, for the foregoing reasons, defendants' motion will be DENIED.

---

**2.** Under Tennessee negligence law, a child owes a duty of care to act as a reasonably prudent person of like age, capacity, knowledge, and experience. *Arnold v. Hayslett,* 655 S.W.2d 941, 947 (Tenn.1983). Furthermore, a rebuttable pre- sumption exists that a child between the ages seven and fourteen is incapable of negligence. *Wolfe v. Hart,* 679 S.W.2d 455, 457 (Tenn.Ct.App. 1984).