IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 15, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

E1999-02319-COA-R3-CV

| | |
|---|---|
| FRANCIS IONE LETHCOE, as surviving spouse and next of kin of Vernon Lethcoe, deceased, for the benefit of herself and JUSTIN CHARLES LETHCOE, CHRISTOPHER VERNON LETHCOE, CANDICE MISTY LETHCOE, JIMMY JOE BEAR LETHCOE, the surviving children of Vernon Lethcoe,<br><br>      Plaintiff-Appellant,<br><br>v.<br><br><br><br>RICKY RAY HOLDEN and wife, SHEILA MARTIN HOLDEN, and PAM KNOX and husband, VAN KNOX,<br><br>      Defendants-Appellees. | C/A NO. 03A01-9904-CV-00155<br><br><br><br><br><br><br><br><br><br>APPEAL AS OF RIGHT FROM THE MCMINN COUNTY CIRCUIT COURT<br><br><br><br><br><br><br><br><br><br><br><br>HONORABLE JOHN B. HAGLER, JUDGE |

For Appellants

ROBERT E. PRYOR
Pryor, Flynn, Priest & Harber
Knoxville, Tennessee

For Appellees

GARY M. PRINCE
O'Neil, Parker & Williamson
Knoxville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                              Susano, J.

This is a wrongful death case.  Francis Ione Lethcoe

sued the owners of the property on which her late husband, Vernon Lethcoe ("the deceased"), was working when he was injured while engaged in the business of his employer, Bain and Holden Tire Company, Inc. ("the employer"). The trial court held that the owners of the property were not legally responsible for the injuries and resulting death of the deceased. It granted their motion for summary judgment. The plaintiff appeals, claiming that the general rule of a landlord's non-liability does not apply to the circumstances of this case.

The material facts of this case are not in dispute. The defendants are the co-owners of the subject property. On September 1, 1991, they leased the premises to the employer for use as a tire buffing and recapping facility. In the lease, the employer agreed that the premises were in a "good, clean, and safe condition and repair" and agreed to maintain the property in such a condition.

The defendant, Ricky Ray Holden, in his capacity as president of the employer, is primarily responsible for the day-to-day operations of the employer. He signed the lease as one of the co-owners and also on behalf of the employer. Two of the other defendants are members of the employer's board of directors. Mr. Holden is on the premises on a daily basis, while the other three defendants are present on the property from time to time.

Dust and rubber shavings, as by-products of the employer's business, are removed to the outside of the building through the use of a specially-designed exhaust system built into the structure of the building. This process often results in the

2

accumulation of rubber dust and shavings on the roof.  Mr. Holden arranges for the removal of the accumulated dust and rubber shavings from the roof once a year, usually in the summer months. He utilizes non-company labor and a non-company dump truck.  On January 6, 1995, the roof collapsed from the accumulated material, and the deceased died as a result of injuries received in the accident.  Full worker's compensation benefits were paid to the deceased's estate by the employer or its carrier.

On January 5, 1996, the plaintiff filed this wrongful death action against the defendants as co-owners of the property. The defendants filed a motion for summary judgment on September 2, 1997, relying on the rule that a landlord is generally not liable to a tenant or third party for harm caused by a dangerous condition on the leased premises.  The trial court granted the motion and later denied the plaintiff's motion to alter or amend the judgment.  The plaintiff now appeals, arguing that, under the facts of this case, certain exceptions to the general rule of a landlord's non-liability are applicable.

Since the facts in this case are not in dispute, our only task is to decide whether those facts show that the defendants are entitled to summary judgment.  *See* Rule 56.04, Tenn.R.Civ.P.; *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

Generally, a landlord is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises.  *Hester v. Hubbuch*, 170 S.W.2d 922, 926 (Tenn.Ct.App. 1942); *Roberts v. Tennessee Wesleyan College*, 450 S.W.2d 21, 24 (Tenn.Ct.App. 1969); *Whitsett v. McCort*, 1990 WL 123943, *4 (Tenn.Ct.App. W.S., filed August 28, 1990).

3

The general rule of a landlord's non-liability is subject to several exceptions. One exception applies if the following facts are shown: (1) the dangerous condition was in existence at the time the lease was executed; (2) the landlord knew or should have known of the dangerous condition; and (3) the tenant did not know of the condition and could not have learned about it through the exercise of reasonable care. *Maxwell v. Davco Corp. of Tennessee*, 776 S.W.2d 528, 531-32 (Tenn.Ct.App. 1989). As a natural corollary of this exception, when a landlord and a tenant have co-extensive knowledge of the dangerous condition, the landlord is not liable to the tenant, or the tenant's employees, for injuries sustained as a result of the dangerous condition. *See id.* at 532.

With respect to this exception, the plaintiff argues that "there is no question but that the dangerous condition pre-existed the Lease and that the [owners] should have known of such dangerous and unsafe condition." Even assuming *arguendo* that a dangerous condition pre-dated the lease and that the owners knew about it, the plaintiff's argument ignores the third requirement for application of the exception, *i.e.*, that the tenant did not have actual or constructive notice of the dangerous condition. Under the facts of the instant case, it is clear that the knowledge of the employer was equal to, if not greater than, the knowledge of the property owners. Thus, if the property owners had actual or constructive knowledge of a dangerous condition on the property, so too did the employer, *i.e.*, the tenant, and this exception to the general rule would not apply. Hence, we find that the undisputed facts do not implicate the subject exception.

4

In a related argument, the plaintiff asserts that the general rule does not apply and that the owners are liable because the property was unsafe for the purpose for which it was leased. She relies on the following facts to support this argument: (1) the building was specially designed to serve as a tire and recapping store; (2) the building included a special exhaust system designed to remove rubber dust and shavings during the recapping process; (3) the rubber dust and shavings often created excessive weight on the roof of the building as they accumulated there; (4) the premises were open to the public; and (5) the owners of the property either knew or should have known all of the foregoing facts. The plaintiff argues that, because the building was unfit for its intended use -- a tire and recapping store open to the public -- the owners owed a heightened duty to the employees of the tenant. This duty was breached, the plaintiff argues, when the roof collapsed, killing the deceased.

This argument is based on the plaintiff's reading of *Stenberg v. Willcox*, 33 S.W. 917 (Tenn. 1896). She cites that case in support of the following statement in her brief: "[i]t is well-settled that when an owner of property leases the property in a condition which would make it unsafe for the purpose for which it is being leased because of a dangerous condition, the owner/lessor will be liable." We have reviewed *Stenberg* and find the plaintiff's interpretation of the case to be flawed.

It is true that *Stenberg* contains the following language: "If the landlord lets the premises for a purpose which he knows (or ought to know) it to be unfit for, knowing that strangers will be invited there, it has been held that he is

5

liable to them." *Id*. at 917. But this statement is only a partial articulation of the rule applied by the *Stenberg* court. The rule, in its entirety, as stated by the court in *Stenberg*, is as follows:

> if plaintiffs can recover at all in this case, it must be upon the ground that the landlord leased premises in a dangerous and unsafe condition, when he knew, or might, by the exercise of reasonable diligence and care, have known, of such unsafe condition, and upon the further ground that plaintiffs did not know of such unsafe condition, and could not have known of it by the exercise of reasonable diligence and care....

*Id*. at 917. We do not believe that the rule announced in *Stenberg* is materially different from the principle set forth in the *Maxwell* case, 776 S.W.2d at 531-32, i.e., the landlord is only liable if (1) the dangerous condition was in existence at the time the lease was executed; (2) the landlord knew or should have known of the dangerous condition; and (3) the tenant did not know of the dangerous condition and could not have discovered it through the exercise of reasonable care. Therefore, we hold that this exception does not apply to the instant case because, as previously stated, the employer's knowledge regarding the dangerous condition was at least equal to that of the owners.

Another exception to the general rule is implicated where the landlord has negligently repaired the premises, regardless of whether the landlord was under a contractual duty to make repairs or whether it simply undertook to make the repairs gratuitously. *Smith v. Tucker*, 270 S.W. 66, 70 (Tenn. 1925). The plaintiff argues that this exception applies because Mr. Holden periodically arranged for the removal of the tire shavings from the roof using neither employees nor personal

6

property of the employer.  The plaintiff contends that the removal of tire shavings amounted to a "repair" and that it was done negligently, apparently because it was not done early enough.  The plaintiff argues that she must be allowed to conduct discovery to determine whether this negligent repair was done by Mr. Holden in his capacity as president of the employer or in his capacity as one of the co-owners.

We are of the opinion that this exception also does not apply.  The fact that Mr. Holden used neither company employees nor company assets to remove the tire shavings from the roof is irrelevant to the question of the capacity pursuant to which he made the necessary arrangements to remove material from the roof. Under the terms of the lease, the employer was responsible for repairs.  It is not significant that Mr. Holden employed outside help to remove the material from the roof.  This does not indicate that the property owners, rather than the employer, were performing the subject task.  We do not think that it is a reasonable inference, based on the facts before us, that Mr. Holden arranged for the removal of tire shavings from the roof in his capacity as one of the owners.  Mr. Holden is the president of the employer.  It is reasonable to assume that he was acting in this capacity.  As previously noted, under the lease, repairs were the responsibility of the employer.

The plaintiff had ample opportunity to conduct discovery in this case.  The complaint was filed on January 5, 1996.  The motion to dismiss was not filed until September 2, 1997.  The plaintiff then had until May 27, 1998, the date of the hearing on the motion, to conduct discovery.  Therefore, the plaintiff had more than sufficient time to do the necessary

discovery.

The plaintiff also asserts that the general rule does not apply and that the owners are liable because, so the argument goes, they retained control of the property. In support of this argument, she again points to the fact that Mr. Holden periodically arranged for the removal of the accumulated material from the roof using resources other than those of the employer. Additionally, she notes that Mr. Holden is both an owner of the property and the president of the employer, that two of the other defendants are members of the employer's board of directors, and that, in addition to Mr. Holden being on the property almost daily, the other three defendants were also on the property from time to time.

It is true that, because the general rule of non-liability of a landlord is premised on the assumption that the landlord is not in control of the property, a landlord may be held liable where the landlord in fact retains control of the property. *Cf*. ***Whitsett v. McCort***, 1990 WL 123943, *4 (Tenn.Ct.App. W.S., filed August 28, 1990).[1] However, the owners here did not retain control of the subject property. As stated previously, the fact that non-company resources were utilized to

---

[1]In ***Whitsett***, a case between a plaintiff-subcontractor and defendant-landowners, we said

> the duty of the landowner concerning defects on the property may be and is delegable when the possession and control of the property is passed to another such as a lessee. Since the rationale for the rule imposing liability on the possessor of property is based upon the superior knowledge and control on the part of the possessor, it necessarily follows that when the control of the premises is turned over to an independent contractor for the performance of the construction contract, the owner-contractee is not liable for the acts of negligence of the contractor or his employees and subcontractors.

*Id*. at *5 (citation omitted).

8

remove the material from the roof does not indicate that Mr. Holden undertook to control the condition on the roof in his capacity as one of the owners. It is more logical and reasonable to find that Mr. Holden was acting for the entity that was responsible for repairs under the lease, and of which he was the president, *i.e.*, the employer.

The plaintiff also asserts that the general rule does not apply because the owners had a continuing duty to ensure the structural integrity of the roof. There is authority for the proposition that, absent a contractual provision to the contrary, a landlord has an obligation to make structural changes and improvements "which are permanent and extensive and add materially to the value of the property." *Taylor v. Gunn*, 227 S.W.2d 52, 55 (Tenn. 1950). However, the plaintiff's reliance on this rule as justification for holding the defendants liable under the circumstances of this case is misplaced. The assumption underlying this argument is that the dangerous condition here was the roof itself. We do not think this is a fair characterization. Rather, the dangerous condition was the accumulation of dust and tire shavings on the roof that, left unattended to over time, caused the roof to collapse. Thus, the employer, and not the owners, was responsible for the creation of the dangerous condition. Therefore, this exception does not apply to the facts of this case.

Finally, the plaintiff argues that the general rule does not apply because of the inherently dangerous activity that was being conducted on the property. In support of this position, Lethcoe relies on *Hutchison v. Teeter*, 687 S.W.2d 286 (Tenn. 1985) and *International Harvester Co. v. Sartain*, 222

9

S.W.2d 854 (Tenn.Ct.App. 1948) for the proposition that, where a landowner conducts an inherently dangerous activity, the landowner has a non-delegable duty to "exercise caution adequate to the peril involved, as for example, in giving notice of its dangerous character." **Sartain**, 222 S.W.2d at 867; *see also* **Hutchison**, 687 S.W.2d at 288 ("the general principles governing the additional responsibility of a landowner to persons lawfully on the premises, such as employees of subcontractors, where the landowner conducts an inherently dangerous activity, are correctly set out in [**Sartain**]"). This is an accurate statement of the law; but it is not applicable to the facts of the instant case. Assuming *arguendo*, that a tire recapping facility is an inherently dangerous activity -- a premise that is certainly not shown by the facts of this case -- the owners leased the property to the employer; they did not operate the facility. It was the employer that occupied the premises and operated the facility.

For the foregoing reasons, we find that there is no genuine issue of material fact and that the defendants are entitled to a judgment as a matter of law. Accordingly, the trial court's grant of summary judgment to the defendants is affirmed, and this case is remanded for collection of costs, pursuant to applicable law. Costs on appeal are taxed to the appellant, Lethcoe.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Herschel P. Franks, J.

10

_____
D. Michael Swiney, J.