IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2002 Session

## PAUL R. PEAK, ET AL. v. TRAVELERS INDEMNITY COMPANY

**Appeal from the Chancery Court for Rutherford County**
**No. 00CV-1053     Robert E. Corlew, III, Chancellor**

---

**No. M2001-03047-COA-R3-CV - Filed December 31, 2002**

---

The named insureds in an automobile liability insurance policy providing $300,000 per accident liability insurance appeal a trial court grant of summary judgment that they had effectively reduced their uninsured motorist limits per accident to $60,000. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and ELLEN HOBBS LYLE, SP. J., joined.

Rick G. Mansfield, Murfreesboro, Tennessee and Larry R. McElhaney, II and S. Alexa Whittemore, Nashville, Tennessee, for the appellants, Paul R. Peak and Virginia M. Peak.

Marc O. Dedman and Gayle B. Lakey, Nashville, Tennessee, for the appellee, Travelers Indemnity Company.

**OPINION**

On September 27, 1999, Paul R. Peak and wife, Virginia M. Peak were seriously injured in an automobile accident involving a head on collision with another vehicle. Mr. and Mrs. Peak were named insureds in a policy of automobile liability insurance issued to them by Travelers Property Casualty Insurance Company, which policy provided liability insurance to the Peaks with limits of $300,000 per accident. At all times material in the case, Tennessee Code Annotated section 56-7-1201(a)(1) required that such policy provide uninsured/underinsured motorist coverage equal to the bodily injury liability limits stated in the policy unless an effective and proper rejection of such equal limits was made in writing by the named insureds pursuant to Tennessee Code Annotated section 56-7-1201(a)(2). The policy in effect at the time of the September 27, 1999 accident provided for a total premium of $744 for the policy period from September 10, 1999 to March 10, 2000. The face of the policy provided for $300,000 bodily injury and property damage for each accident, together with $5,000 medical payment coverage for each accident. As to uninsured motorist coverage, the policy declarations provided:

D1&D3-  Uninsured Motorists Bodily Injury
      Uninsured Motorists Property Damage
      $60,000 each accident
      See Endorsement A41041

The policy in effect at the time of the accident was a renewal of a policy originally issued in October 1996. At the time the original policy was issued and at all times material in the case, Tennessee Code Annotated section 56-7-1201(a)(1)(2) provided:

**Requirements and types of coverage -- Presumptions -- Limitations of liability. --** (a) Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

(1) The limits of such uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.

(2) However, any named insured may reject in writing such uninsured motorist coverage completely or select lower limits of such coverage but not less than the minimum coverage limits in § 55-12-107. Any document signed by the named insured or legal representative which initially rejects such coverage or selects lower limits shall be binding upon every insured to whom such policy applies, and shall be conclusively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto. Unless the named insured subsequently requests such coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal, reinstatement, or replacement of such policy, or the transfer of vehicles insured thereunder, where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer; provided, that whenever a new application is submitted in connection with any renewal, reinstatement or replacement transaction, the provisions of this section shall apply in the same manner as when a new policy is being issued.

Tenn. Code Ann. § 56-7-1201(a)(1)(2).

At the time of the October 1996 application for the policy and as a part thereof, Paul R. Peak executed and returned to Travelers the following document[1]:

## UNINSURED MOTORISTS COVERAGE
## OPTION SELECTION FORM (TENNESSEE)

Under Tennessee law, we must provide Uninsured Motorists Bodily Injury Coverage at a limit equal to the Bodily Injury Liability limit of your policy. However, you have the right to reject Uninsured Motorists Bodily Injury Coverage entirely or to select a limit that is lower than your Bodily Injury Liability limit.

If you accept the full Uninsured Motorists Bodily Injury Coverage, we will also provide Uninsured Motorists Property Damage Coverage at a limit equal to the Property Damage Liability limit of your policy. However, you have the right to reject Uninsured Motorists Property Damage coverage entirely or to select a limit that is lower than your Property Damage Liability limit.

NOTE: You may not choose an Uninsured Motorists Bodily Injury and/or Property Damage limit that is greater than your Liability limits. If your policy has a single Liability limit, you may choose only a single limit Uninsured Motorists Coverage option. If you have split Liability limits, you may choose only a split limit Uninsured Motorists Coverage option.

Complete the following only if you want to reject all or part of your Uninsured Motorists Coverage.

OPTION I          I reject Uninsured Motorists Coverage entirely.

OPTION II         I do not want Uninsured Motorists Property Damage Coverage. However, I do want Uninsured Motorists Bodily Injury Coverage at the following limit. I understand that the limit I choose must be equal to or less than the Bodily Injury Liability limit of my policy:

### BODILY INJURY ONLY

| SINGLE LIMIT | SPLIT LIMIT |
|---|---|
| mit equal to the | mers or operators of uni |
| mit equal to th | $ 25,000/50,0ÿ|ÿ |
| mit equal to th | $ 50,000/100,00ÿÿ |
| mit equal to th | njury Coverage at a |
| mit equal to th | njury Coverage at a |
| $ 1,000,00. | njury Coverage at a |

OPTION III        I want Uninsured Motorists Bodily Injury and Property Damage Coverage. However, I want limits lower than my Bodily Injury and Property Damage Liability limits:

---

[1]A reproduction of the actual form used is attached hereto as Appendix "A".

BODILY INJURY AND PROPERTY DAMAGE

| SINGLE LIMIT | SPLIT LIMITS | |
|---|---|---|
| | (Bodily Injury) | (Property Damage) |
| *60,000* | | |
| nit equal to the | $ 20,000/40,000 | $ 10,000 |
| nit equal to th | | nit equal to the |
| nit equal to th | | nit equal to the |
| nit equal to th | | m nt equal to th |
| nit equal to th | | m nt equal to th |
| $ 1,000,00 | $300,000/500,000 | $ 100,00 |

I understand and agree that selection of one of the above options applies to my present auto insurance policy and future renewals or replacements of this policy. If I decide to select another option at some future time, I must let the Company or my agent know in writing.

*10-10-96*          *Paul R. Peak*

Date          Signature (Named Insured)


Based upon this document, the uninsured motorist limits in the original policy was $60,000 and the record discloses no requests by the named insureds subsequent thereto for any increase in uninsured/underinsured motorist coverage and the $60,000 limits were carried over into subsequent renewals through and including the September 10, 1999 renewal in effect at the time of the accident.

Appellants assert that because the Option III box on the Uninsured Motorist Coverage Option Selection Form was not marked in October 1996, it is ineffective to reduce the uninsured/underinsured motorist coverage from $300,000 to $60,000.

Appellees assert that the Uninsured Motorist Coverage Option Selection Form was sufficient under Tennessee Code Annotated section 56-7-1201(a)(2) to effect a reduction in uninsured/underinsured motorist coverage from $300,000 to $60,000.

The case was decided in the trial court on cross-motions for summary judgment wherein the trial court, without elaboration, overruled the motion of the named insureds and granted the motion of Travelers.

Appellate review of a grant of summary judgment involves only a question of law and no presumption of correctness attaches to the decision of the trial court. *Roberts v. Roberts*, 845 S.W.2d 225 (Tenn. Ct. App. 1992). The party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issues are involved and that the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

Under Tenn.R.Civ.P. 56.03, a summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Moving parties may demonstrate that they are entitled

to a judgment as a matter of law in several ways. First, they may affirmatively negate an essential element of the nonmoving party's claim. Second, they may conclusively establish an affirmative defense that defeats the nonmoving party's claim. Third, they may demonstrate that the nonmoving party cannot establish an essential element of its case. *Moman v. Walden*, 719 S.W.2d 531, 533 (Tenn.App.1986). *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727, at 130-31 (2d ed. 1983).

In ruling on a motion for summary judgment, both appellate and trial courts must review the matter in the light most favorable to the nonmoving party and draw all legitimate conclusions of fact in its favor. *Smith v. Sovran Bank Cent. South*, 792 S.W.2d 928 (Tenn.App.1990). If the pleadings, stipulations, depositions, and affidavits, when viewed in the light most favorable to the opponent of summary judgment, show that no genuine issue of material fact exists, and if the record reveals no error of law, the moving party is then entitled to summary judgment. *Maxwell v. Davco Corp. of Tennessee*, 776 S.W.2d 528, 531 (Tenn.App.1989).

*Caledonia Leasing v. Armstrong, Allen*, 865 S.W.2d 10, 13 (Tenn. Ct. App. 1992).

The circumstances surrounding the execution and submission to Travelers of the October 1996 application for insurance and particularly the "Uninsured Motorist Coverage Option Selection Form" included as a part of this application are evidenced by affidavits submitted by Ann Barnes of Miller & Loughry Insurance Agency under date of October 1, 2001 and by named insured Paul R. Peak under dates of April 18, 2001 and June 18, 2001.

The affidavit of Ann Barnes, after asserting her employment by Miller & Loughry Insurance Agency for twelve and a half years states:

3.  I was the agent for Paul R. Peak and Virginia M. Peak for the time period involved in this litigation.

4.  The "Uninsured Motorist Coverage Option Selection Form" reflects $60,000 in uninsured motorist bodily injury and property damage coverage because those were the limits that Mr. Peak requested. The selection was marked and the amount was handwritten in by me at Mr. Peak's instructions. The form was then signed, dated and returned to me by Mr. Peak. The insurance coverages provided to Mr. Peak conformed with his selection as reflected on the Uninsured Motorist Coverage Option Selection Form (Tennessee). Mr. Peak specifically declined uninsured motorist coverage equaling his liability limits and specifically instructed that the uninsured motorist limits equals $60,000. Mr. Peak also signed an acceptance of a quote for $300,000 liability limits and $60,000 U.M. limits.

(emphasis added)

The affidavits of Paul R. Peak are significant for what they do not say. At no point does he deny the assertion by Ann Barnes that the $60,000 limits appearing in the "Uninsured Motorist Coverage Option Selection Form" were written thereon by Ms. Barnes "at Mr. Peak's instructions." He further acknowledges that he signed, dated and returned the form to Ann Barnes with the penned-in $60,000 uninsured/underinsured motorist coverage limit reflected thereon at the time he signed the document.

The affidavit of Mr. Peak of April 18, 2001 states:

1. I received an "Uninsured Motorists Coverage Option Selection Form" from Defendant in the mail on or about October 10, 1996 in the mail. (exhibit A)
2. The form, in bold letters, states: "Complete the following only if you want to reject all or part of your Uninsured Motorists Coverage."
3. Below the bold print are three separate choices designated as, "Option I," "Option II" and "Option III." Beside each of the three is a check box for the applicant to mark to select the corresponding option.
   a. "Option I" states, "I reject Uninsured Motorist Coverage entirely."
   b. "Option II" states, "I do not want Uninsured Motorists Property Damage Coverage. However, I do want Uninsured Motorists Bodily Injury Coverage at the following limit. I understand that that the limit I choose must be equal to or less than the Bodily Injury Liability limit of my policy." [sic]
   c. "Option III" states, "I want Uninsured Motorists Bodily Injury and Property Damage Coverage. However I want limits lower than my Bodily Injury and Property Damage Liability limits."
4. I did not select any of the three options.
5. The form states at the bottom, "I understand and agree that selection of one of the above options applies to my present auto insurance policy and future renewals or replacements of this policy. If I decide to select another option at some future time, I must let the Company or my agent know in writing." Below this statement are two lines, one marked "Date" and the other marked "Signature (Named Insured).
6. I signed and dated the form and returned the form to the Defendant.
7. I did not select any of the three options or make any other markings on the form.

The affidavit of Paul Peak of June 18, 2001 provides:

1. I received an unsigned, undated "Uninsured Motorists Coverage Option Selection Form" from Defendant in the mail on or about October 10, 1996 (exhibit A).
2. The form had blank spaces highlighted for the date and my signature at the bottom of the page.
3. I did not strike through any dollar amounts on the form.

4. I did not write in "$60,000" or any other amount on the form.

Construing these affidavits in the light most favorable to Appellants as must be done on motion for summary judgment, the crucial undisputed fact is that Mr. Peak requested of Ms. Barnes $60,000 in uninsured/underinsured motorist coverage and Ms. Barnes penned-in the $60,000 figure on the selection form, then forwarded the form to Mr. Peak who signed it on October 10, 1996 and returned it to Ms. Barnes.

The policy of insurance was then issued in October 1996 selecting $60,000 uninsured/underinsured motorist coverage and such coverage has remained the same and Appellants have enjoyed the reduced premium for such limited coverage through and including the time of the September 27, 1999 accident.

The entire case for Appellants hinges on a finding that the failure to mark the "Option III" block on the Uninsured Motorist Coverage Option Selection Form renders it ineffective as a vehicle for the selection of the lower limits of uninsured/underinsured motorist coverage, which the undisputed evidence shows was, in fact, requested by Mr. Peak on October 10, 1996.

Making all allowances for strict construction against Travelers, reasonable minds could not accept the premise upon which the case for Appellants is based.

The trial court correctly granted summary judgment to Appellees and we affirm the judgment.

Costs of the cause are assessed against Appellants and the case is remanded for any further proceedings necessary.

_____
WILLIAM B. CAIN, JUDGE